Gerald Steven LEPRE, Appellant,

v.

DEPARTMENT OF LABOR, Employee
Compensation Appeals Board,
Appellee.

No. 00–5053.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 22, 2001.

Decided Dec. 21, 2001.

60

Andrew W. Bagley, appointed by the court, argued the cause as amicus curiae on the side of appellant. With him on the briefs was Dana C. Contratto.

Gerald S. Lepre, appearing pro se, was on the briefs for appellant.

Irene M. Solet, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief were Wilma A. Lewis, U.S. Attorney at the time the brief was filed, John C. Hoyle, Assistant U.S. Attorney, and David W. Ogden, Assis-

tant Attorney General, U.S. Department of Justice. Daria J. Zane and R. Craig Lawrence, Assistant U.S. Attorneys, entered appearances.

Before: ROGERS, Circuit Judge, SILBERMAN and WILLIAMS*, Senior Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

Concurring opinion filed by Senior Circuit Judge SILBERMAN.

ROGERS, Circuit Judge:

This appeal concerns the judicial review provision of the Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8128(b) (1994), in a case involving the suspension of temporary total disability benefits to an employee for failing to appear for a required medical examination. In rejecting Gerald Steven Lepre's claim that he never received notice of the examination, the Department of Labor's Employees' Compensation Appeals Board ("Board") relied on the presumption that mail sent has been received. Lepre now appeals the dismissal of his complaint, contending that the district court erred in rejecting his due process challenge based on lack of notice and in ruling that § 8128(b) barred judicial review of his claim that the Secretary of the Department of Labor violated the clear statutory mandate of FECA.

We hold that § 8128(b) does not bar judicial review of Lepre's due process challenge to the Department's alleged systemic reliance on the mailbox presumption. We further hold that Lepre's due process challenge is unpersuasive. We do not reach the question of whether § 8128(b) bars judicial review of a claimed violation by the Secretary of a clear statutory mandate

because Lepre's complaint fails to allege a facial violation of FECA. Accordingly, we affirm the dismissal of the complaint.

## I.

Under FECA, "an employee shall submit to examination by a medical officer of the United States, or by a physician designated or approved by the Secretary of Labor, after the injury and as frequently and at the times and places as may be reasonably required." 5 U.S.C. § 8123(a). "If the employee refuses to submit to or obstructs an examination, his right to compensation is suspended until the refusal or obstruction stops." *Id.* § 8123(d).

In November 1993, while Lepre was employed as a federal corrections officer in Otisville, New York, a prisoner struck him with a wooden industrial floor broom, causing a lumbosacral strain. Lepre filed a claim for disability benefits with the Department of Labor's Office of Workers' Compensation Programs ("OWCP"), and was awarded continuation of pay followed by wage loss benefits for temporary total disability under FECA, 5 U.S.C. §§ 8101 *et seq.* Lepre received regular payments for temporary total disability through December 13, 1994. His benefits were interrupted for approximately ten months in 1995, after which he received compensation for the period ending March 31, 1995. Following another interruption, he eventually received compensation from OWCP for the period between April 1, 1995, and September 17, 1995. Although his benefits were restored as of August 18, 1996, when he indicated that he was willing to submit to a medical examination, Lepre has never received benefits for the period between September 18, 1995, and August 18, 1996, because of OWCP's position that he failed

---

* Senior Circuit Judge Williams was in regular active service at the time of oral argument.

to comply with requests to submit to a second opinion medical examination.

In a letter addressed to "Gerald S. Lepre" dated June 30, 1995, OWCP informed Lepre that in order to "clarify the cause and extent of [your] injury-related impairment," he was to see a physician on August 3, 1995, and that failure to appear "may result in the suspension of your right to compensation under Title 5 U.S.C. 8123(d) until the refusal or obstruction is deducted from the period for which compensation is payable." Lepre did not appear for the medical appointment. In a follow-up letter addressed to "Gerald Lepri" on August 14, 1995, OWCP stated that Lepre needed to explain why he failed to keep the appointment, and that "any action on your part short of full cooperation could result in suspension of benefits." No response to this letter was ever received. Finally, in a letter addressed to "Gerald S. Lepre" dated September 18, 1995, OWCP informed Lepre that his claim for benefits had been disallowed because of his failure to attend or explain his nonattendance at the scheduled medical examination. All three of OWCP's letters were addressed to Lepre at 106 Willow Avenue, Susquehanna, PA 18847.

On September 20, 1995, Lepre wrote to OWCP advising of the problems he was having with his "claim." He attached what he described as "a current set of forms" as well as his affidavit stating that he had complied with all prior medical appointments. Although he did not expressly state in his affidavit that he had not received OWCP's pre-suspension notices, he demanded proof of service and stated that he was not notified, as the claims examiner averred in her findings of fact, of the August 3, 1995 medical examination, and that the presumption that he was notified had prejudiced him. In his affidavit, he also stated that all future correspondence should be sent to him by certified mail, return receipt requested, to:

Gerald S., Lepre, <u>Sui Juris</u>, Juris et de jure
c/o 106 Willow Avenue
34th Judicial <u>d</u>istrict
Susquehanna Depot <u>b</u>orough
Susquehanna, Pennsylvania <u>c</u>ommonwealth Republic <u>s</u>tate

OWCP treated Lepre's letter as a request for reconsideration of the suspension of his benefits, and denied the request on September 29, 1995. OWCP did not interpret Lepre's letter to indicate his willingness to submit to a medical examination and declined to change Lepre's mailing address, because it would not be recognized by the U.S. Postal Service for lack of a zip code.

Nearly a year later, on August 19, 1996, Lepre appealed to the Employees' Compensation Appeals Board, advising that he had not heard anything from OWCP and was willing to attend a medical examination if notified. The Board denied Lepre's appeal and subsequent request for reconsideration. In determining that Lepre had failed to offer sufficient reasons for failing to cooperate with the second opinion medical examination, the Board relied on the "mailbox rule," pursuant to which:

It is presumed, in the absence of evidence to the contrary, that a notice mailed to an individual in the ordinary course of business was received by that individual. This presumption arises when it appears from the record that the notice was properly addressed and duly mailed. The appearance of a properly addressed copy in the case record, together with the mailing custom or practice of the Office itself, will raise the presumption that the original was received by the addressee. While in his request for reconsideration, [Lepre] requested that all mail be sent to another address, prior to that time, the address

of record was correctly used by the Office. As [Lepre] has not provided any evidence to the contrary, it is presumed that he was duly notified of the scheduled appointment.

The Board declined to consider Lepre's contention that the federal statutes applied by OWCP are inapplicable to him as a citizen of the State of Pennsylvania, stating that the Board "has long recognized that it is not the proper forum to challenge the constitutionality of an act of Congress," citing its decision in *Christino Rodriguez*, 8 ECAB 428 (1955), inasmuch as "[t]he exercise of jurisdiction by the federal courts regarding constitutional issues is calculated to directly uphold and preserve the principle of separation of powers."

Lepre then filed *pro se* a petition in the district court seeking review of the Board's decision, raising both constitutional and statutory claims. Specifically, Lepre alleged that "he [had] never received proper notice to attend [the] medical examination," had notified the Department of his proper mailing address, and had anticipated that a new date for a medical examination would be set. Asserting that his affidavit claiming non-receipt of the notice was unrebutted, and that the Department failed to offer evidence during the administrative proceedings that the letters had been mailed, much less received, Lepre sought relief in a variety of forms, including the award of the denied benefits, a remand with direction to the Board to reverse its decision, and a declaration that the Secretary of the Department has a duty to reschedule a medical examination once the obstruction is removed or the claimant is willing to submit to such examination. In moving *pro se* for summary judgment, Lepre challenged the constitutionality of the Board's reliance on the mailbox rule, as well as the adequacy of the administrative review procedures used to determine whether a beneficiary has

refused to attend a medical examination, on the ground that they fail to afford a meaningful opportunity to be heard.

The district court denied Lepre's motion for summary judgment and granted the Department's motion to dismiss for lack of jurisdiction under Fed.R.Civ.P. 12(b)(1). Construing § 8128(b) to bar judicial review of the benefits determination, the district court ruled that it had jurisdiction to review Lepre's constitutional claims. Assuming Lepre had a property interest in the continued payment of FECA benefits, the court held that his due process rights to notice and an opportunity to respond were satisfied by OWCP's postdeprivation notice of September 18, 1995, which Lepre admitted receiving, and the availability of administrative reconsideration and appeal.

## II.

On appeal, Lepre contends because an injured employee has a property interest in FECA benefits, due process requires at a minimum that the employee receive actual notice, a hearing or an opportunity to be heard, and a judicial determination. Lepre also contends that the Board's decision relied on bald assertions and conclusions of law in finding that he refused or obstructed the taking of a medical examination, without any evidence to rebut his affidavit that he did not receive OWCP's notices. In contending that Congress did not intend for § 8128(b) to preclude review of constitutional claims, Lepre, assisted by amicus on appeal, focuses on the strong presumption of judicial review of administrative actions and Supreme Court decisions interpreting bars to judicial review. Amicus maintains that not only does the language of § 8128(b) not specifically preclude judicial review of constitutional claims, the legislative history reveals no congressional intent to bar such claims.

Amicus maintains further that preclusion could lead to the potentially absurd result of allowing the Department to trample over FECA beneficiaries' constitutional rights with impunity, and that otherwise § 8128(b) would violate the separation of powers and the Fifth Amendment's Due Process Clause. Nor, amicus contends, does § 8128(b) bar review of Lepre's claim that the Secretary violated FECA's clear statutory mandate or exceeded her statutory authority.

### A.

■ The issue of whether the court has jurisdiction to review Lepre's due process and statutory mandate contentions is reviewed de novo. *See Ridder v. Office of Thrift Supervision,* 146 F.3d 1035, 1038 (D.C.Cir.1998). Although the Department does not contest that the court has jurisdiction to review substantial constitutional claims, the court must make its own determination of its jurisdiction. *See Floyd v. District of Columbia,* 129 F.3d 152, 155 (D.C.Cir.1997).

Section 8128(b) provides, in pertinent part, that:

The action of the Secretary or h[er] designee in allowing or denying a payment under this subchapter is –

(1) final and conclusive for all purposes and with respect to all questions of law and fact; and

(2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

5 U.S.C. § 8128(b) (1994). The language of § 8128(b) is facially uncompromising as to the "action of the Secretary," but amicus maintains that it refers only to the benefits decision and not to the practice or procedure used in making decisions. In interpreting § 8128(b)'s scope, we have significant guidance from the Supreme Court and the law of this circuit.

In *Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), the Supreme Court addressed whether 38 U.S.C. § 211(a) barred judicial review of a facial challenge to the Veterans' Readjustment Benefits Act of 1966, on the ground that by denying educational benefits to conscientious objectors who had completed alternative civilian service, the statute unconstitutionally discriminated against them and infringed upon their religious freedom. Section 211(a) provided that:

[T]he decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.

Because construing the review provision to foreclose judicial review of constitutional claims "would ... raise serious questions concerning the constitutionality of § 211(a)," the Court looked to see whether Congress intended such an interpretation. *Id.* at 366, 94 S.Ct. at 1165. Finding that "neither the text nor the scant legislative history of § 211(a)" sufficed to furnish the requisite clear and convincing evidence of congressional intent to prohibit judicial review of constitutional challenges to the statute, the Court construed the statute to permit judicial review of the claim. *Id.* at 373–74, 94 S.Ct. at 1169.

The Supreme Court has remained faithful to *Robison*'s teachings. In *Webster v. Doe,* 486 U.S. 592, 603, 108 S.Ct. 2047, 2053, 100 L.Ed.2d 632 (1988), applying the "heightened showing" required by *Robison,* the Court held that colorable constitutional challenges to a discretionary

decision of the Director of the CIA to terminate an employee were judicially cognizable while other challenges to the termination were precluded. *See id.* at 600, 603, 108 S.Ct. at 2053–54. So too in *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), the Court rejected the notion that statutory authorization of judicial review of some acts suffices to support an inference of exclusion as to others. *See id.* at 672, 106 S.Ct. at 2136. Finding that the legislative history of 42 U.S.C. §§ 1395ff and 1395ii revealed an intent to preclude judicial review only of the amounts of benefits awarded under Part B of the Medicare Act, *see Bowen,* 476 U.S. at 676–77, 106 S.Ct. at 2138–39, the Court held there was no bar to judicial review of constitutional and statutory challenges to agency regulations. *See id.* at 680, 106 S.Ct. at 2140. Thereafter, in *Traynor v. Turnage,* 485 U.S. 535, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988), the Court took note of *Robison's* reasoning, that "the prohibitions [of § 211a] would appear to be aimed at review only of those decisions of law or fact that arise in the administration by the Veterans' Administration of a statute providing benefits for veterans," 415 U.S. at 367, 94 S.Ct. at 1166, in concluding that judicial review was not barred of a challenge to a Veteran's Administration regulation as violative of § 504 of the Rehabilitation Act. *Traynor,* 485 U.S. at 543, 545, 108 S.Ct. at 1379, 1380.

Meanwhile, following the instruction in *Robison,* this circuit, in the so-called *Ralpho* trilogy, has required, when confronted with similarly worded statutory review provisions, special clarity of congressional intent to bar federal courts from adjudicating the merits of constitutional challenges. In *Ralpho v. Bell,* 569 F.2d 607, 612–13 (D.C.Cir.1977), the court was confronted with a challenge, not that a statute was

unconstitutional, but that the agency implementing the statute had violated due process by relying on secret valuation data in ruling on a claim for compensation for destruction of a private residence. It was also confronted with claims of nonconstitutional error. A provision of the Micronesian Claims Act of 1971, 50 U.S.C. §§ 2018–2020b (Supp. II 1972), provided that claims determinations "shall be final and conclusive for all purposes, notwithstanding any other provision of law to the contrary and not subject to review." *Id.* § 2020. The court rejected the argument that a challenge to the constitutionality of agency action was sufficient to distinguish the case from *Robison.*

[I]f legislation by Congress purporting to prevent judicial review of the constitutionality of its own actions is itself constitutionally suspect, legislation that frees an administrative agency from judicial scrutiny of its adherence to the dictates of the Constitution must pose grave constitutional questions as well. Not only is it daring to suggest that Congress, though subject to the checks and balances of the Constitution, may create a subordinate body free from constraints; it also beggars the imagination to suggest that judicial review might be less crucial to assuring the integrity of administrative action than it is to make certain the Congress will operate within its proper sphere. If the courts are disabled from requiring administrative officials to act constitutionally, it is difficult to see who would perform that function.

*Ralpho,* 569 F.2d at 620. The court applied the standards of *Robison, id.* at 621, reviewing the legislative history to determine if Congress intended to cut off judicial review of constitutional claims, and concluded that Congress "took such a drastic step ... with marked silence as to

its purpose." *Id.* In the one instance that "might suggest such a legislative purpose," the court noted, Congress had addressed concerns about Commission positions becoming "posh sinecures" through dilatory behavior by instructing the Commission to wind up its work within three years. The court declined to "assume that Congress courted a constitutional confrontation merely to facilitate Commission adherence to a timetable, which is ... merely directory." *Id.* at 620. However, the court also found "clear evidence of congressional concern for the due process rights of claimants under the Act." *Id.* at 621. Hence, consistent with a duty to avoid construing a statute in a manner that would bring it into conflict with the Constitution, the court held that "challenges of constitutional stature impugning action by the [agency] are cognizable in the federal courts." *Id.* at 621-22.

The two other parts of the trilogy, *Griffith v. Federal Labor Relations Auth.*, 842 F.2d 487 (D.C.Cir., 1988), and *Ungar v. Smith*, 667 F.2d 188 (D.C.Cir.1981), reaffirmed the *Ralpho* analysis. In *Griffith*, the court observed that "[e]ven though constitutional attacks on a statute carry much less risk of trammelling other administrative system than do claims that a particular act of an agency was unconstitutional, we have extended this 'particularly rigorous' style of interpretation into the latter, more treacherous area." 842 F.2d at 487. The court held that it had jurisdiction to review an as-applied due process challenge under the Civil Service Reform Act of 1978, 5 U.S.C. §§ 7122–23 (1982). An Internal Revenue Service employee who took the denial of a within-grade increase to arbitration succeeded in securing a retroactive pay increase under the Back Pay Act, 5 U.S.C. § 5596 (1982). The Federal Labor Relations Authority rescinded the award on the ground that the arbitrator had erred in applying the terms of the Back Pay Act. The employee filed suit, contending (among other things) that the Authority's failure to remand to the arbitrator deprived her of "property" in the form of the pay increase, thereby infringing on her due process rights. *Id.* at 490. The Civil Service Reform Act provided for judicial review by "[a]ny person aggrieved by any final order of the Authority other than an order under [ ] section 7122 ... (involving an award by an arbitrator), unless the order involves an unfair labor practice under section 7118." 5 U.S.C. § 7123(a). The court found no specific evidence that Congress intended to preclude judicial review of constitutional claims and addressed the merits of the as-applied due process challenge. *Id.* at 495–501.

In *Ungar*, the court held that it had jurisdiction of an as-applied constitutional challenge to a denial of a request under the Trading with the Enemy Act, 22 U.S.C. § 1631o (1976), for the return of assets owned by a Hungarian pharmaceutical company that had been seized during World War II. Although § 1631o(c) provided that claims determinations were to be "final" and "not ... subject to review by any court," the court reiterated that "only the clearest evocation of congressional intent to proscribe judicial review of constitutional claims will suffice to overcome the presumption that the Congress would not wish to court the constitutional dangers inherent in denying a forum in which to argue that government action has injured interests that are protected by the Constitution." *Ungar*, 667 F.2d at 193. A review of the legislative history of § 1631o(c) uncovered no reference to the proscription of judicial review. *See id.* at 194. Looking to the history of related statutes, the court found at most "scant assistance," *id.*, and "failed to discover anything that might be considered a clear

expression of Congress' desire to prevent courts from passing on constitutional claims of those seeking return of vested assets." *Id.* at 196. The court remanded the case for the Justice Department to establish procedures, consistent with due process, that provided adequate time for the preparation and examination of whatever probative evidence was submitted to it in support of a claim. *See id.* at 198.

## B.

■ Turning to Lepre's contention that § 8128(b) does not bar review of his due process challenge to the mailbox rule, we need only look to *Robison* and its progeny to conclude that we have jurisdiction. Although it also is clear that we have jurisdiction under the *Ralpho* trilogy's clear statement rule, the court, while continuing to apply the *Ralpho* trilogy, has recently raised the question whether language in *Traynor*, 485 U.S. at 542–45, 108 S.Ct. at 1379–80, undermines the trilogy's premise that *Robison* was based more on ideas of special status of constitutional claims than statutory language. *See McBryde v. Comm. to Review Circuit Council Conduct and Disability Orders of the Judicial Conference of the United States*, 264 F.3d 52, 59–60 (D.C.Cir.2001), *petition for en banc review pending*. *Robison* and *Traynor* have also spawned two lines of analysis on how to interpret withdrawal of jurisdiction provisions framed in the manner of § 8128(b): one that distinguishes between constitutional and statutory claims, *see Czerkies v. United States Dep't of Labor*, 73 F.3d 1435, 1442 (7th Cir.1996) (en banc), and another that distinguishes between systemic challenges and case-specific decisions, *id.* at 1443 (Easterbrook, J., concurring in the judgment). We need not choose between the theories. Because Lepre's due process challenge focuses on a structural component of the FECA system itself, and not simply on an individual deci-

sion on a benefits claim, his challenge is both constitutional and systemic.

■ We hold that § 8128(b) does not bar judicial review of Lepre's due process challenge to the mailbox rule. This conclusion is consistent with the statutory language, Supreme Court precedent, and precedents from other circuits. As amicus suggests, the language of § 8128(b) speaks only to the action of the Secretary "under this chapter" and does not rule out judicial review of constitutional challenges. The Supreme Court noted in *Walters v. National Ass'n of Radiation Survivors*, 473 U.S. 305, 311 n. 3, 105 S.Ct. 3180, 3184 n. 3, 87 L.Ed.2d 220 (1985), that "[d]espite the general preclusion of judicial review with respect to VA benefit claims, [the Supreme] Court held in *Johnson v. Robison*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), that the district courts have jurisdiction to entertain constitutional attacks on the operation of the claims system." In *Traynor*, the Supreme Court, observing that the statute at issue addressed "decisions of the Administrator," and that regulations governing such programs are not "decisions," distinguished between systemic challenges and case-specific decisions. 485 U.S. at 543–44, 108 S.Ct. at 1379–80; *see also Bowen*, 476 U.S. at 678, 106 S.Ct. at 2140. Without exception, every other circuit to consider the scope of § 8128(b) has concluded that it does not bar judicial review of constitutional claims. *See Czerkies*, 73 F.3d at 1442 (7th Cir. en banc); *id.* at 1443 (Easterbrook, J., concurring in the judgment); *Brumley v. United States Dep't of Labor*, 28 F.3d 746, 747 (8th Cir.1994) (per curiam); *Benton v. United States*, 960 F.2d 19, 22 (5th Cir.1992) (per curiam); *Woodruff v. United States Dep't of Labor*, 954 F.2d 634, 639 (11th Cir.1992) (per curiam); *Owens v. Brock*, 860 F.2d 1363, 1367 (6th Cir.1988); *Paluca v. Secretary of Labor*,

813 F.2d 524, 525–26 (1st Cir.1987); *Rodrigues v. Donovan*, 769 F.2d 1344, 1347–48 (9th Cir.1985). As the Seventh Circuit majority of the en banc court reasoned, to find review to be precluded could lead to absurd results, either allowing agencies to trample over claimants' constitutional rights with impunity or not to consider them at all. *See Czerkies*, 73 F.3d at 1442. Although the *McBryde* court held that the statutory bar in that case extended to as-applied constitutional claims, 264 F.3d at 62–63, *McBryde* may be *sui generis* given its emphasis on redundancy, *see id.* at 62, as it involved Article III judges reviewing a challenge to the imposition of judicial discipline, albeit not in the usual court context; no such circumstances exist in the instant case. Alternatively, the element under attack – the Secretary's generic use of the mailbox rule – is both "structural" and "systemic," and therefore review is not barred by § 8128(b)'s bar on review of specific "action" of the Secretary. *See Czerkies*, 73 F.3d at 1444, 1446 (Easterbrook, J., concurring in the judgment).

Furthermore, despite the "uncompromising language" of § 8128(b), *id.* at 1438, the search for congressional intent is neither elusive nor difficult to understand. The analysis of the legislative history of § 8128(b) in *Czerkies* is compelling. A review of FECA's legislative history revealed "the limited scope of the door-closing provision." *Id.* at 1440. As that court recounted, § 8128(a) became part of FECA in 1945, as part of a statute that was addressing special problems arising out of World War II. In particular, there was difficulty in determining and administering compensation for injuries sustained by noncitizen employees of the federal government who were injured while working outside of the United States. Congress resolved the problem by providing in § 4 of the 1945 legislation that the benefits commission should base compensation awards on local law or custom, and "near the end tacked on the sentence about the commission's … action being final and conclusive that appears in the current statute." *Id.* at 1441. "So far as appears," the Seventh Circuit concluded, "the 1945 door-closing provision was intended to be limited to awards under section 4, the section of which it was the penultimate sentence – odd placement if the provision was intended to govern *all* claims under the compensation law." *Id.* Further, "[t]here is no indication at any stage in the evolution of the statute that Congress meant to enlarge the scope of the original limitation, let alone to curtail constitutional remedies." *Id.* Only a letter from the commission's chairman suggested that the door-closing provision of section 4 was intended to promote finality in payment, but that discussion focused on payments to employees in foreign countries where failure to comply with local custom would upset the employee and the local authorities. *See id.* (citing S.Rep. No. 421, 79th Cong., 1st Sess. 5–6 (1945)). Thus, the Seventh Circuit was satisfied that the door-closing provision did not appear to apply to claims by United States citizens. *See id.* The court, therefore, concluded that "[t]he history of [FECA] provides no basis for rebutting the presumption of judicial review of constitutional claims." *Id.*

## III.

Turning to the merits of Lepre's due process challenge, he contends that the Department's reliance on the mailbox rule, in conjunction with the Department's deficient post-suspension review procedures, fails to meet the requirements of due process. His challenge thus implicates no less than the constitutional adequacy of the systemic procedures employed by the Department in suspending FECA benefits in addition to the adequacy of the procedures

as applied to Lepre himself. Specifically, he contends that he was unconstitutionally deprived of his FECA disability benefits because he never received OWCP's June 30, 1995 notice of the required medical examination, or its August 14, 1995 follow-up letter. In addition, Lepre contends that the administrative reconsideration and appeal procedures failed to provide him with a meaningful opportunity to be heard.

■■ Except for certain narrow exceptions, due process generally requires that a deprivation of a property interest in government benefits be preceded by adequate notice and an opportunity to respond, either in person or in writing. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). The opportunity to be heard must be provided "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (internal quotations omitted). In *Eldridge*, the Court instructed, however, that "[d]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to the time, place and circumstances.... Due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334, 96 S.Ct. at 902 (internal quotations omitted). Among the relevant factors to be considered in striking the appropriate balance are "the degree of potential deprivation that may be created by a particular decision," *id.* at 341, 96 S.Ct. at 906, "the fairness and reliability of the existing pre-termination procedures, and the probable value, if any, of additional procedural safeguards," *id.* at 343, 96 S.Ct. at 907, as well as "the public interest ... includ[ing] the administrative burden and other societal costs that would be associated with requiring, as a matter of constitutional right,"

the added safeguards. *Id.* at 347, 96 S.Ct. at 909.

With respect to his as-applied challenge, Lepre does not contend that he was unable to present his evidence during the administrative review proceedings. Rather, he relies on his affidavit stating that he had not received notice of the medical examination. In view of the Department's failure to introduce evidence that the pre-suspension notices had been mailed or evidence regarding OWCP's mailing practices in general, Lepre maintains that his affidavit was unrebutted and sufficed to vitiate the presumption of receipt. He relies on *Legille v. Dann*, 544 F.2d 1 (D.C.Cir.1976), where the court held that Federal Rule of Evidence 301 embodies the "bursting bubble" theory, whereby the presumption of delivery of mail that arises upon proof of the foundation facts evaporates as a rule of law in the face of contrary evidence. *See id.* at 4–6; *see generally Bratton v. The Yoder Company*, 758 F.2d 1114, 1119 (6th Cir.1985). An issue of fact thus arises when the person to whom mail is addressed denies receipt. *See Witt v. Roadway Express*, 136 F.3d 1424, 1430 (10th Cir.1998); *American Cas. Co. of Reading v. Nordic Leasing, Inc.*, 42 F.3d 725, 734 (2d Cir.1994).

In applying the mailbox rule, the Board relied on copies of OWCP's three letters (each addressed to Lepre at 106 Willow Avenue, Susquehanna, PA 18847), as well as its knowledge of OWCP's customary mailing practices. However, it appears from the record on appeal that there was no evidentiary foundation regarding OWCP's mailing practices, nor evidence that these particular letters had been mailed. Presumably to remedy this deficiency, the Department introduced in the district court a declaration from the Chief of OWCP's Branch of Regulations, Policies, and Procedures stating that a review

of Lepre's file indicated that "[i]n accordance with OWCP's established procedures for scheduling such examinations, the notice of examination was sent by first class mail to Lepre's address of record." With this declaration, there may well have been sufficient evidence to support an inference in the district court that OWCP's notices had been mailed. *See Mahon v. Credit Bureau of Placer County, Inc.*, 171 F.3d 1197, 1202 (9th Cir.1999); *Meckel v. Continental Res. Co.*, 758 F.2d 811, 817 (2d Cir.1985). The question would still remain, however, whether Lepre's affidavit sufficed to rebut the presumption that the notices had also been received by him. Lepre does not contend that prior to June 30, 1995, he had notified OWCP of any change in his address, and the address set forth in his affidavit is virtually identical to the address of record to which OWCP had been sending its letters. *Cf. Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 318–19, 70 S.Ct. 652, 659–60, 94 L.Ed. 865 (1950); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798–800, 103 S.Ct. 2706, 2711–12, 77 L.Ed.2d 180 (1983). Further, Lepre admits receiving OWCP's September 18, 1995, notice of suspension of benefits. Under the circumstances, some courts have concluded that a mere denial of receipt is insufficient to rebut the presumption accorded the sender under the mailbox rule. *See Mahon*, 171 F.3d at 1202; *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir.1997); *McCall v. Bowen*, 832 F.2d 862, 864 (5th Cir.1987); *Meckel*, 758 F.2d at 817; *cf. Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 947–48 (8th Cir. 1999).

Lepre contends, however, that in applying the mailbox rule the Board placed an insurmountable burden on him to prove a negative (i.e., that he did not receive the letters or, alternatively, that OWCP never mailed the letters), thereby transforming the presumption into an irrebuttable axiom. Lepre further contends that as a systemic matter, such reliance on the mailbox rule does not comport with due process. Indeed, it is difficult to conceive of what more a FECA beneficiary could have done to demonstrate that he had not received OWCP's pre-suspension notices, and on appeal the Department's only response is that requiring OWCP to accept his "unsupported statement as conclusive" would compel use of return-receipt requested mail. For reasons that follow, we need not decide whether, as a matter of due process, OWCP's reliance on the mailbox rule, combined with its practice of timely mailing notification of required medical examinations to the beneficiary's address of record and following up, as necessary, with a letter seeking an explanation and cooperation prior to the suspension of benefits, strikes a fair balance between claimants' interests in the continued receipt of benefits, the risk of unwarranted deprivations of or disruptions in the provision of benefits, and the need to administer disability benefits reliably and efficiently. *Cf. Eldridge*, 424 U.S. at 347, 96 S.Ct. at 908–09. *See also Kerr*, 184 F.3d at 948.

Lepre contends that he was entitled to receive actual notice prior to the suspension of his benefits. The Supreme Court established in *Mullane* that notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," 339 U.S. at 314, 70 S.Ct. at 657, and reiterated in *Tulsa Prof. Collection Servs. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988), that "mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice." *Id.* at 490, 108 S.Ct. at 1347; *see also Mennonite Bd.*, 462 U.S. at 800, 103 S.Ct. at 2712. Consistent with the teachings of *Mullane*, courts have examined the

surrounding circumstances to determine whether the government has shown, not that actual successful notice occurred, but that it made reasonable efforts to give actual notice to the intended recipient. See, for example, *Covey v. Town of Somers,* 351 U.S. 141, 146–47, 76 S.Ct. 724, 727–28, 100 L.Ed. 1021 (1956), involving notice to an incompetent person, and cases involving incarcerated persons, *United States v. Dusenbery,* 223 F.3d 422 (6th Cir.2000), *cert. granted in part,* 531 U.S. 1189, 121 S.Ct. 1186, 149 L.Ed.2d 103 (2001); *United States v. Minor,* 228 F.3d 352, 358 (4th Cir.2000); *United States v. One Toshiba Color Television,* 213 F.3d 147, 155 (3d Cir.2000); *Weng v. United States,* 137 F.3d 709, 714 (2d Cir.1998); *Small v. United States,* 136 F.3d 1334, 1337 (D.C.Cir.1998) (citing *Robinson v. Hanrahan,* 409 U.S. 38, 40, 93 S.Ct. 30, 31, 34 L.Ed.2d 47 (1972)). *See also Mennonite Bd.,* 462 U.S. at 798 n. 4, 103 S.Ct. at 2711 n. 4. On the record before the district court, it is conceivable, particularly in view of Lepre's admission that he received the September 18, 1995, notice of suspension, that OWCP made reasonable efforts to furnish Lepre with actual pre-suspension notice. Neither Lepre nor amicus suggest that special measures to ensure actual notice were required in Lepre's case, as in *Covey,* 351 U.S. at 146–47, 76 S.Ct. at 727–28.

▮ We proceed, however, on the basis that Lepre's affidavit sufficed to rebut the presumption arising under the mailbox rule, given the difficulty of expecting a FECA beneficiary to do more and the Department's apparent evidentiary lapse before the Board. Mail sent does not always arrive at its destination, and some courts have viewed a sworn denial of receipt as sufficient to establish an issue of material fact. *See, e.g., Witt,* 136 F.3d at 1430; *American Cas. Co. of Reading,* 42

F.3d at 734. Thus, the question is whether, after rejecting the Board's reliance on the mailbox rule in the face of Lepre's affidavit, Lepre would prevail on his due process challenge. He would not. Where a notice is lost in the mail, the availability of agency reconsideration and appeal provide sufficient avenues of redress and rectification to meet the requirements of due process. *See Stuto v. Fleishman,* 164 F.3d 820, 825–27 (2d Cir.1999); *Raditch,* 929 F.2d at 480–82 (citing *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 3203–04, 82 L.Ed.2d 393 (1984), and *Parratt v. Taylor,* 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981)). The record indicates that Lepre received OWCP's suspension notice, and he offers no more than bald assertions that the post-suspension proceedings were "a sham" and that he did not have a fair opportunity to challenge OWCP's decision. *Cf. Stuto,* 164 F.3d at 823. In the absence of specificity, the court has no basis to conclude, even assuming a mistaken denial of benefits, that Lepre's due process rights were violated. *See Czerkies,* 73 F.3d at 1443. We therefore affirm the district court's denial of Lepre's due process challenge.

**IV.**

Lepre also contends that the Secretary violated FECA's statutory mandate by failing to reschedule his medical examination after receipt of his September 20, 1995, letter and affidavit. Specifically, he maintains that the Secretary's inaction violated § 8123(d), pursuant to which a beneficiary's "right to compensation under this subchapter is suspended until the refusal or obstruction stops." According to Lepre, his affidavit demonstrated that he never refused to submit to or obstructed a medical examination. Further, Lepre maintains that his request that all future correspondence be sent by certified mail to the revised address manifested his willing-

ness to submit to a new medical examination, thereby removing any grounds for continuing to withhold his benefits. Relying on *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), amicus contends that judicial review of this alleged violation of FECA's statutory mandate is not barred by § 8128(b).

█  Our analysis again begins with "the strong presumption that Congress intends judicial review of administrative action," *Bowen*, 476 U.S. at 670, 106 S.Ct. at 2135, which "may be overcome 'only upon a showing of clear and convincing evidence of a contrary legislative intent.'" *Traynor*, 485 U.S. at 542, 108 S.Ct. at 1378 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967)). As the Supreme Court observed, however:

> Subject to constitutional constraints, Congress can, of course, make exceptions to historic practice whereby courts review agency action. The presumption of judicial review is, after all, a presumption, and 'like all presumptions used in interpreting statutes, may be overcome by,' *inter alia*, 'specific language or specific legislative history that is a reliable indicator of congressional intent,' or a specific congressional intent to preclude judicial review that is 'fairly discernible in the detail of the legislative scheme.'

*Bowen*, 476 U.S. at 672, 106 S.Ct. at 2137 (quoting *Block v. Community Nutrition Inst.*, 467 U.S. 340, 349, 104 S.Ct. 2450, 2455–56, 81 L.Ed.2d 270 (1984)).

█  Even when Congress has not expressly provided for judicial review, it may nonetheless be available. *See id.*; *Traynor*, 485 U.S. at 545, 108 S.Ct. at 1380. In *Kyne*, the Supreme Court held that a determination by the National Labor Relations Board that directly conflicted with a provision of the National Labor Relations Act was judicially cognizable, despite the absence of express authorization of judicial review of such determinations. *See* 358 U.S. 188–89, 79 S.Ct. at 183–84. The Court stated that it "cannot lightly infer that Congress did not intend judicial protection of rights it confers against agency action taken in excess of delegated powers." *Id.* at 190, 79 S.Ct. at 185. Thereafter, in *Oestereich v. Selective Serv. Sys. Local Bd. No. 11*, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), the Court observed that such judicial oversight is needed to protect against "freewheeling agencies meting out their brand of justice in a vindictive manner." *Id.* at 237, 89 S.Ct. at 416. Thus, where agency action contravenes a specific statutory prohibition and results in the overstepping of the agency's delegated powers, judicial review is not barred. *See Boire v. Greyhound Corp.*, 376 U.S. 473, 480–81, 84 S.Ct. 894, 898–99, 11 L.Ed.2d 849 (1964). The Court subsequently stated in *Board of Governors of the Fed. Reserve Sys. v. MCorp Financial, Inc.*, 502 U.S. 32, 43–44, 112 S.Ct. 459, 465–66, 116 L.Ed.2d 358 (1991), that two "critical" factors distinguished the review provision at issue in *Kyne*: the lack of any alternative means of judicial review for the plaintiffs, and the lack of a clear statement of Congress's preclusive intent, such that the National Labor Relations Board was forced to "contend[ ] that a statutory provision that provided for judicial review implied, by its silence, a preclusion of review of the contested determination." *Id.* at 43–44, 112 S.Ct. at 466. In the absence of such factors, the Court held that the *Kyne* exception did not apply. *Id.*; *cf. United States v. Fausto*, 484 U.S. 439, 448–51, 108 S.Ct. 668, 673–76, 98 L.Ed.2d 830 (1988).

In keeping with the Supreme Court's guidance, this court has recognized a narrow statutory mandate exception to statutory bars to judicial review. In *Ralpho*, the court stated with regard to nonconsti-

tutional claims of error that, notwithstanding Congress' power to "shield[ ] even the most patent deviation from statutory scheme from judicial redress where the Constitution is not implicated," the "courts have assumed it less likely that Congress intended to prohibit review of a claim that the activities of an agency are facially invalid than of the 'numerous discretionary, factual, and mixed questions of law determinations' normally underlying an agency's decisionmaking process." *Ralpho*, 569 F.2d at 622 (quoting *Oestereich*, 393 U.S. at 240, 89 S.Ct. at 417–18). Explaining that this assumption reflects both a reluctance to license "free wheeling agencies meting out their own brand of justice," and "a nice appreciation, presumably shared by Congress, that courts of law possess peculiar expertise in statutory interpretation," the court looked "to see how far Congress desired to muzzle the courts and unleash the agency, and will normally disregard 'basically lawless' agency action only when clearly instructed to do so." *Id.* Notably, the court observed that Congress is not required in order "to ensure preclusion, [to] spell out the boundaries of its intention with excruciating particularity," but is presumed to have done so "only after deliberation that made its intention plain." *Id.* at 624. The court found no such evidence of congressional intent in the statutory provision at issue (indeed "no evidence at all of the scope that Congress contemplated"). *See id.* at 625. Accordingly, the court held that § 2020 did not foreclose judicial review of claims that the agency disregarded unambiguous statutory directives or constitutional commands. *Id.* at 626–27; *see also Dart v. United States*, 848 F.2d 217, 222 (D.C.Cir.1988). *But cf. McBryde*, 264 F.3d at 63–64; *Griffith*, 842 F.2d at 493.

This court has yet to decide whether § 8128(b) precludes judicial review of a claim that the Secretary disregarded the plain letter of the law. On the one hand, the clarity of Congress's preclusional intent as to the Secretary's benefits determinations can hardly be gainsaid. The Supreme Court has referred to § 8128(b) as an example of language that Congress employs when it "intends to bar judicial review altogether." *Lindahl v. Office of Personnel Mgmt.*, 470 U.S. 768, 780 n. 13, 105 S.Ct. 1620, 1627 n. 13, 84 L.Ed.2d 674 (1985). However, § 8128(b) is silent as to claims that the Secretary acted outside the scope of her statutory authority, and, as the Fourth Circuit pointed out in *Hanauer v. Reich*, 82 F.3d 1304 (4th Cir.1996), "unlike the statutory scheme at issue in *MCorp*, [FECA] does not provide for judicial review of a final order of the Secretary." *Id.* at 1308. Thus, "[a]cceptance of the Secretary's argument that § 8128(b) precludes district courts from considering claims that the Secretary violated a clear statutory mandate would, in the words of the Supreme Court, 'wholly deprive [claimants] of a meaningful and adequate means of vindicating [their] statutory rights.'" *Id.* at 1308–09 (quoting *MCorp*, 502 U.S. at 43, 112 S.Ct. at 465). *Cf. Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 19, 120 S.Ct. 1084, 1096–97, 146 L.Ed.2d 1 (2000); *Bowen*, 476 U.S. at 678, 106 S.Ct. at 2140. A majority of other circuits to have considered the issue have held that judicial review is available for clear violations of FECA's statutory mandate. *Compare, e.g., Brumley v. United States Dep't of Labor*, 28 F.3d 746 (8th Cir.1994); *Woodruff v. United States Dep't of Labor, Office of Workers Comp.*, 954 F.2d 634 (11th Cir.1992) (per curiam); *Staacke v. United States Sec'y of Labor*, 841 F.2d 278 (9th Cir.1988), *with McDougal–Saddler v. Herman*, 184 F.3d 207 (3d Cir.1999); *Paluca v. Secretary of Labor*, 813 F.2d 524 (1st Cir.1987).

We need not now decide whether such a statutory mandate exception exists for § 8128(b). In *Griffith* the court stated that "review may be had only when the agency's error is patently a misconstruction of the Act, ... or when the agency has disregarded a specific and unambiguous statutory directive, ... or when the agency has violated some specific command of the statute.... Garden-variety errors of law or fact are not enough." *Griffith*, 842 F.2d at 493. Lepre's contention amounts to an alleged "garden-variety" error by the Secretary, one in the nature of a factual dispute or a mixed question of law and fact, rather than claim of a statutory violation that is plain on its face. Lepre maintains only that his letter and affidavit of September 20, 1995, should have been viewed by OWCP as an indication that he no longer "obstructed" or "refused" to submit to a medical examination, thus rendering the Secretary's failure to reschedule the examination and her continued suspension of his benefits a violation of the statute. This is no more than a challenge to the assessment of Lepre's evidence. Yet an examination of his September 20, 1995, letter and September 21, 1995, affidavit shows that they do not clearly convey a readiness to submit to a second medical examination or a request for rescheduling, much less suggest a clear violation of a statutory mandate by the Secretary. *Cf. Senerchia v. United States,* 235 F.3d 129, 132 (2d Cir.2000); *Ridder,* 146 F.3d at 1040–41. Hence, whatever discretion the Secretary may have to restore FECA benefits retroactively, following a new medical examination (despite an earlier missed medical examination), her refusal to do so for Lepre does not, on the grounds he asserts, constitute a violation of a clear statutory mandate, nor does it constitute a violation of Lepre's due process rights.

Accordingly, we affirm the district court's denial of Lepre's due process challenge and the dismissal of Lepre's statutory challenge for lack of jurisdiction.

SILBERMAN, Senior Circuit Judge, concurring:

The Supreme Court has for a number of years, as Judge Rogers' collection of cases shows, demonstrated an unseemly resistance to statutes that preclude, or even limit, judicial review. Its resistance more reflects James Buchanan's public choice theory, *see Crawford–El v. Britton,* 93 F.3d 813, 832 (D.C.Cir.1996) (Silberman, J., concurring), than a fair interpretation of those statutes. Not surprisingly, the fiercest opposition is mounted to protect the Supreme Court's authority to interpret the Constitution. That authority lies at the core of the Supreme Court's power since, when exercised, it is virtually unchallengeable. Thus, the Court repeatedly holds that statutes should not be read as depriving the federal courts of jurisdiction to entertain constitutional challenges purportedly because that reading would itself supposedly raise a serious constitutional question—even when that reading is the obvious one. *See, e.g., Johnson v. Robison,* 415 U.S. 361, 366, 94 S.Ct. 1160, 1165, 39 L.Ed.2d 389 (1974). Yet paradoxically, the same Supreme Court has admonished the Court of Appeals not to use that maxim of statutory interpretation unless the statute is truly capable of an alternate construction. *See Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 841, 106 S.Ct. 3245, 3251–52, 92 L.Ed.2d 675 (1986). If the Court believes that a statutory preclusion of constitutional claims is unconstitutional, it should so hold, *but see Webster v. Doe,* 486 U.S. 592, 611, 108 S.Ct. 2047, 2057–58, 100 L.Ed.2d 632 (1988) (Scalia, J., concurring in part and dissenting in part), rather than engaging

in this series of disingenuous statutory interpretations.

In light of these cases, we are now led to a limiting construction (not covering constitutional challenges—at least generic ones) of a statute the Supreme Court itself once described as using the language Congress employs when it intends to bar judicial review altogether. *See Lindahl v. Office of Personnel Mgmt.,* 470 U.S. 768, 780 n. 13, 105 S.Ct. 1620, 1627 n. 13, 84 L.Ed.2d 674 (1985). The Supreme Court has brought us to a statutory interpretation which is really a *reductio ad absurdum.*

To be sure, because the appellant's claim can be described as a generic rather than an as applied challenge we need not decide whether we agree with the majority of the Seventh Circuit in *Czerkies v. United States Dep't of Labor,* 73 F.3d 1435 (7th Cir.1996) (en banc), that under this statute any constitutional challenge must be heard, or Judge Easterbrook's concurrence that would limit such challenges to generic ones. I think Judge Easterbrook has somewhat the better of the argument because I agree with him that virtually any plaintiff can get judicial review by clothing an ordinary case in constitutional garb. I also believe the majority, by reasoning that only by being able to bring a case in federal court does a plaintiff gain constitutional protection, *Czerkies,* 73 F.3d at 1442, overlooks the point that all government officials take an oath to the Constitution. Although government agencies may not entertain a constitutional challenge to authorizing statutes they *must* decide constitutional challenges to their own policies whether embodied in generic rules or as applied in an individual case. *See Meredith Corp. v. FCC,* 809 F.2d 863, 872 (D.C.Cir.1987).

On the other hand, it must be conceded that a distinction between generic and as applied challenges does not emerge naturally from reading the statute. And I am not sure Judge Easterbrook's line holds back very much litigation since virtually any as applied claim can be phrased—as in this case—as a generic challenge. Perhaps we should just give up; I doubt that the Supreme Court has left us any principled ground upon which a Court of Appeals judge can honor a congressional preclusion of review of a constitutional claim.

The most forthright reason to read the statute's preclusion of judicial review of "all questions of law and fact" as not reaching constitutional challenges is that such challenges have, for quite some time, not really been based on "law." Supreme Court decisions—particularly in the last century—have resembled more the periodic declarations of a continuing constitutional convention than efforts to read the Constitution as a body of positive law.