John DIOGUARDI, Plaintiff,

v.

ROCHESTER LABORERS PENSION FUND, Robert Brown, Trustee, Raymond Kuntz, Jr., Trustee, James Williams, Trustee, Thomas Helfrich, Trustee, Defendants.

No. 02–CV–6084L.

United States District Court, W.D. New York.

Jan. 26, 2004.

John Joseph Ferlicca, Rochester, NY, for Plaintiff.

Jules L. Smith, Blitman & King, Rochester, NY, for Defendants.

## DECISION AND ORDER

LARIMER, District Judge.

Plaintiff, John Dioguardi ("Dioguardi"), commenced this action seeking to recover additional pension benefits under § 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), from defendant, Rochester Laborers Pension Fund ("the Fund"). Defendant moved for summary judgment on several grounds, one of which was that the complaint was untimely. The pension plan at issue here ("the Plan") provides that no legal action may be commenced or maintained against the Plan more than ninety days after the final decision of the Plan Trustees. Defendants contend that the action is untimely since the complaint in this Court was not filed until nearly fourteen months after issuance of defendants' notice of the Plan Trustees' adverse decision.

Dioguardi conceded that the complaint was filed well after the ninety-day limitation period. He claimed, however, that he should not be bound by the amendment to the Plan which added the ninety-day requirement, since he never received notice of it.

Because I believed that there were factual issues to be resolved concerning the circumstances surrounding the Plan's notification of the modification and Dioguardi's receipt of that notification, by decision and order entered October 23, 2003 (Dkt.# 33), I scheduled a trial on those issues.

A hearing was held on November 24, 2003. Based on the testimony at the hearing, as well as the papers filed in connection with defendants' motion for summary judgment, I find Dioguardi received notice of the amendment to the Plan, requiring that legal action be commenced within ninety days from the adverse decision. I also find that that Dioguardi's complaint was untimely since it was filed fourteen months after notice to him of the adverse decision from the Plan's Trustees.

## DISCUSSION

Dioguardi had concerns relative to the calculation of his pension benefit, and he retained attorney John J. Ferlicca, Esq., Rochester, New York, to handle those issues with the pension fund. By letter dated December 22, 2000, the Fund's attorney wrote to attorney Ferlicca advising him of the Trustees' adverse decision not to credit Dioguardi with certain employment periods because there had been a break in service during 1975. The letter advised Ferlicca that "[n]o further appeal can be taken in this matter." *See* Complaint, Ex. D.

■ There are several matters that revolve around the limitations issue. First, Dioguardi contends that the notice to his attorney was insufficient and that Dioguardi should have received it directly. At oral argument, Ferlicca, who represents Dioguardi in this federal court action, conceded that Dioguardi did have actual knowledge of the Plan's final decision on or about December 22, 2000, when he, Ferlicca, informed Dioguardi of the decision. I be-

lieve, under the facts of this case, that distribution of the notice of the final decision was proper. Dioguardi had retained an attorney who had communicated with the Trustees and represented Dioguardi, as agent, in this dispute with the Trustees. Since Dioguardi was represented by counsel, it was entirely proper for the Trustees to notify Dioguardi's counsel, rather than Dioguardi directly, of their final decision.

The next issue, and the one aired at the trial before the Court, concerns whether Dioguardi ever had knowledge of the Plan's requirement that he commence legal action within ninety days of an adverse decision. It appears that the original Plan contained no such directive, but by March 31, 2000, the Board modified the Plan by inserting the following language:

> You may commence legal action against the Plan if you disagree with the Trustees' final decision on your appeal. However, no legal action may be commenced or maintained against the Plan more than ninety (90) days after Plan Trustees' final decision on your appeal is deposited in the mail to you or your beneficiary's last known address.

The Plan mailed notification of this change by notice dated October 27, 2000 (Trial Exs. 5, 6). The Fund does not dispute that Plan participants must receive notice if the Pension Plan contains a limitations period shorter than what would otherwise be applicable under state law. *See* Decision and Order of October 23, 2003 (Dkt.# 33), at 2. Defendants contend that notices of the change were mailed to all Plan participants and that Dioguardi, one of the several hundred Plan participants, is presumed to have received that mailing.

At the trial on this issue, the Pension Fund called one witness, Dana Lewis, an administrative assistant for the Fund who had been employed there for approximately twenty-eight years. She had been ap-

pointed to that position by the Joint Board of Trustees, which was composed of both union and management representatives. She testified that part of her job was to oversee the various mailings distributed by the Fund.

She testified that there would be several mass mailings a year that she would supervise. There are roughly between 800 and 1,000 participants in the Plan who would receive mailed notifications. The Fund uses a software program for its mailings. Information is placed on the computer system from beneficiary cards (Trial Ex. 2) which each Plan participant prepares. That card contains the address of the participant, his social security number, marital status, telephone number, birth date and other information. Dioguardi's address on the card and on the computer printout is listed, correctly, as 9 Dio Lane, Box. 231, Mt. Morris, New York.

At trial, Lewis testified concerning different types of mailings. Some of the mailings were newsletters that went out quarterly. Other mailings, including the one at issue, concerned Plan modifications. In each case when there was a mass mailing, she would check to see if any mailings had been returned because of faulty addresses or because participants had moved.

She identified the two documents (Trial Exs. 5 and 6) which were the single-page notification to participants of the modification requiring litigation within ninety days of the adverse decision. Lewis testified that she recalled this particular mailing. The reason was because there were two documents to be mailed and the automatic sorter would not work, and she recalls personally stuffing envelopes with the two notices (Trial Exs. 5 and 6).

The computer was programmed to print labels for all of the Plan participants, and Lewis recalled checking the computer

counter to make sure the proper number had been printed. Lewis also testified that she had a specific recollection of taking the notices herself to the Cumberland Street Post Office in Rochester. She testified that it was not unusual to take large mailings since she routinely did so with the other mass mailings sent out by the Plan.

Lewis testified that she knew that Dioguardi had received mailings off the master list. He had requested items, and she had mailed them to him at the address on the master list. Receipts were printed out for some mailings, principally the newsletters that were mailed, and Dioguardi's name appears on all of those computer-generated lists.

Lewis was the only witness at the hearing. Dioguardi did not testify himself and presented no other evidence. The fact that Dioguardi did not testify is a bit curious since the Court's Order of October 23, 2003, specifically referenced the fact that there were issues of credibility that needed to be resolved concerning the notice, its mailing and plaintiff's receipt of it. Specifically, the Court noted that "the determination of whether plaintiff received the notice depends upon an assessment of his credibility." Decision and Order of October 23, 2003, at 2. Later in the decision, the Court noted that as factfinder it would have to assess plaintiff's credibility "after having had a chance to hear his testimony and observe his demeanor upon the witness stand." *Id.* at 2–3.

Conceivably, plaintiff's testimony would have been as it was at his deposition: that he had received mailings from the Plan previously but did not recall receiving this particular notice. But, even if plaintiff had testified in that fashion, I do not believe it would change the result.

■ I believe defendant is entitled to rely on the well-established rule that there is a presumption that items mailed, in due course, were received by the addressee.

*See Sherlock v. Montefiore Med. Ctr.,* 84 F.3d 522, 525 (2d Cir.1996); *Hoffenberg v. Commissioner of Internal Revenue,* 905 F.2d 665, 666 (2d Cir.1990); *Lepre v. Department of Labor,* 275 F.3d 59, 62 (D.C.Cir.2001); *Kerr v. Charles F. Vatterott & Co.,* 184 F.3d 938, 947 (8th Cir.1999); *Witt v. Roadway Exp.,* 136 F.3d 1424, 1429–30 (10th Cir.), *cert. denied,* 525 U.S. 881, 119 S.Ct. 188, 142 L.Ed.2d 154 (1998); *see also Konst v. Florida East Coast Ry. Co.,* 71 F.3d 850, 851 (11th Cir.1996) ("The common law has long recognized a rebuttable presumption that an item properly mailed was received by the addressee") (citing *Nunley v. City of Los Angeles,* 52 F.3d 792, 796 (9th Cir.1995)). In addition, although that presumption is rebuttable, "[t]he mere denial of receipt does not rebut that presumption. There must be-in addition to denial of receipt-some proof that the regular office practice was not followed or was carelessly executed so the presumption that notice was mailed becomes unreasonable." *Meckel v. Continental Resources Co.,* 758 F.2d 811 (2d Cir.1985) (citing *Nassau Ins. Co. v. Murray,* 46 N.Y.2d 828, 829–30, 414 N.Y.S.2d 117, 386 N.E.2d 1085 (1978); *accord Leon v. Murphy,* 988 F.2d 303, 309 (2d Cir. 1993)).

I believe that the Fund, principally through the testimony of Ms. Lewis and the exhibits produced at the hearing, established a sufficiently reliable system of mailing to warrant a finding that: the notices were mailed to all Plan participants; Dioguardi was one of those participants; and, therefore, he received the notice in October 2000 that the Plan had been modified to require a lawsuit within ninety days of an adverse decision.

Furthermore, plaintiff was represented by counsel when he objected to the Plan's calculation and thereafter. There is no evidence that the Plan misled Dioguardi or

his lawyer as to the specific limitations period for commencing legal action. The Plan, and its modifications, were certainly available for inspection and review.

In light of the above, I find that plaintiff did have proper notice of the Plan's requirements that litigation must be commenced from an adverse decision within ninety days and that this lawsuit was not commenced for well over a year after notice of that adverse decision. Under these circumstances, I have little choice but to find that the action is untimely and barred by the limitations period contained in the Plan. *See Northlake Regional Medical Center v. Waffle House System Employee Benefit Plan*, 160 F.3d 1301, 1304 (11th Cir.1998) (finding employee benefit plan's 90–day limitations period for bringing legal action against plan to be reasonable and enforceable); *see also Aloisi v. Lockheed Martin Energy Systems, Inc.*, 321 F.3d 551, 557–58 (6th Cir.2003) (finding "nothing 'unfair' " about applying 90–day statute of limitations of state Uniform Arbitration Act to action under Labor Management Relations Act seeking to overturn arbitrator's decision that plaintiff was not entitled to long-term disability benefits pursuant to collective bargaining agreement, and noting that "[t]he record reflects no reason why Aloisi, with reasonable diligence, could not have complied with the applicable deadline").

## CONCLUSION

Defendants' motion for summary judgment (Dkt.# 10) is granted, and the complaint is dismissed. Plaintiff's cross-motion for summary judgment (Dkt.# 17) is denied.

IT IS SO ORDERED.