James C. MAHON, individually; Gloria R. Mahon, individually, Plaintiffs–Appellants,

v.

CREDIT BUREAU OF PLACER COUNTY INCORPORATED, a California corporation; Eugene Bellisario, individually, Defendants–Appellees.

No. 97–17298.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 12, 1999.

Decided March 10, 1999.

As Amended on Denial of Rehearing and Rehearing En Banc April 28, 1999.

Alex Veylupek and David Abrams, Sacramento, California, for the plaintiffs-appellants.

Mark Ewell Ellis and Joseph Zuber, Murphy, Pearson, Bradley & Feeney, Sacramento, California, for the defendants-appellees.

Before: WOOD [1] THOMPSON and THOMAS, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Gloria and James Mahon (the "Mahons") appeal the district court's grant of summary judgment in favor of the Credit Bureau of Placer County, Inc. and its president, Eugene Bellisario (collectively, the "Credit Bureau"), in the Mahons' action alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692g. The Mahons contend the district court erred by (1) failing to hear oral argument before granting the Credit Bureau's motion for summary judgment, (2) holding that the Credit Bureau complied

---

**1.** The Honorable Harlington Wood, Jr., Senior United States Circuit Judge for the Seventh Circuit Court of Appeals, sitting by designation.

with the FDCPA by merely sending a Validation of Debt Notice pursuant to 15 U.S.C. § 1692g(a), without establishing its receipt, and (3) holding that the Credit Bureau adequately verified the debt, as required by 15 U.S.C. § 1692g(b). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I

## FACTUAL AND PROCEDURAL BACKGROUND

Gloria Mahon incurred a bill of $279.70 for medical services rendered by Dr. Larry Bowen between January 1993 and June 1993. From June 1993 through August 1995, Dr. Bowen's office sent monthly billing statements for $279.70 to the Mahons at their home address. The Mahons say they never received these statements. On September 20, 1995, after more than two years and no response from the Mahons, Dr. Bowen's office assigned the collection of the $279.70 past due account to the Credit Bureau.

As part of its regular course of business, the Credit Bureau uses computerized collection tracking and filing software, known as Columbia Ultimate Business Systems ("CUBS"). CUBS automatically generates standardized collection notices for the Credit Bureau. The collection notices are then mechanically addressed, stuffed, and posted by another machine. Prior to mailing, employees ensure that the number of outgoing notices corresponds with the number assigned to the daily "batch." CUBS also acts as an electronic filing system for each collection account, recording all collection activities, including which notices are sent to whom and on what date. Account personnel monitor collection activity on each account, routinely noting whether an envelope is returned undelivered.

On September 21, 1995, CUBS printed a standardized collection letter regarding the Mahons' delinquent account with Dr. Bowen (the "September 21 Notice"). In accordance with its standard business practice, the Credit Bureau mailed the letter to the Mahons' home address. The Mahons had lived at that address for 45 years. Although an "exact" copy of the letter was not produced, the Credit Bureau produced a letter substantially similar to that sent. The letter referenced the debt owed Dr. Bowen, the principal amount of the debt ($279.70), the accrued interest due ($52.34), and included the Credit Bureau's Standard Validation of Debt Notice, as required by the FDCPA. The Mahons did not respond to the letter, and the letter was not returned to the Credit Bureau by the Postal Service.

On October 12 and November 13, 1995, CUBS generated second and third standardized letters, which were also mailed to the Mahons' home address. The Mahons did not respond to these letters either. The Mahons contend these letters were returned to the Credit Bureau as undeliverable. They base this contention on a June 10, 1996 letter to James Mahon in which the Credit Bureau's president, Eugene Bellisario, stated, "We also mailed notices on October 12, 1995 and November 13, 1995, and then mail was returned." In his deposition, Mr. Bellisario testified this statement was a mistake, due to his cursory review of the file—in fact, no mail addressed to the Mahons was returned to the Credit Bureau. This is consistent with the CUBS printouts, which do not indicate that any mail sent to the Mahons was ever returned.

In January 1996, after receiving no response to any of the letters and repeatedly attempting without success to contact the Mahons by telephone, the Credit Bureau reported to the major credit reporting agencies that the Mahons' account was delinquent. In the early spring of 1996, the Mahons discovered their account had been reported delinquent. On June 5, 1996, James Mahon wrote the Credit Bureau and demanded verification of the debt. The Credit Bureau received this letter on June 10, 1996. Mr. Bellisario immediately contacted Dr. Bowen's office, inquired about the debt, and learned it was

still unpaid. The next day, Bellisario sent a letter to the Mahons conveying this information and enclosing an itemized statement of the account.

On September 20, 1996, the Mahons filed their complaint in this action. They alleged the Credit Bureau violated the Federal Debt Collection Practices Act by (1) failing to send a written Validation of Debt Notice, under 15 U.S.C. § 1692g(a), and (2) failing to adequately verify the debt, under 15 U.S.C. § 1692g(b).

On September 8, 1997, the Credit Bureau moved for summary judgment. Neither party requested oral argument, and on October 20, 1997, the district court ordered the motion for summary judgment submitted without oral argument. Neither party objected to that procedure, and on November 6, 1997, the district court granted the Credit Bureau's motion. Summary judgment was entered in favor of the Credit Bureau and this appeal followed.

## II

## STANDARD OF REVIEW

We review de novo a grant of summary judgment. *See City of Vernon v. Southern Cal. Edison Co.*, 955 F.2d 1361, 1365 (9th Cir.1992). Viewing the evidence in the light most favorable to the Mahons, we must determine whether there is a genuine issue of material fact in dispute and whether the district court correctly applied the relevant substantive law. *See id.*

## III

## DISCUSSION

*A. The Summary Judgment Motion*

■ The Mahons argue the district court erred by failing to hold oral argument before granting the Credit Bureau's motion for summary judgment. Neither party requested oral argument of the summary judgment motion. Consequently, in accordance with the Eastern District of California's Local Rule 78–230(h), the district court entered summary judgment without oral argument. It did not err in so doing.

The Mahons' reliance on *Jasinski v. Showboat Operating Co.*, 644 F.2d 1277 (9th Cir.1981), is misplaced. In *Jasinski*, we expressly stated, "Rules 56(c), 78, and 83, [of the Federal Rules of Civil Procedure] read together, authorize district courts to provide by rule that a party desiring oral argument on a motion for summary judgment must apply therefor, in the absence of which oral argument will be deemed to have been waived." *Id.* at 1280 (quoting *Dredge Corp. v. Penny*, 338 F.2d 456, 462 (9th Cir.1964)); *see also Fernhoff v. Tahoe Reg'l Planning Agency*, 803 F.2d 979, 983 (9th Cir.1986) (upholding a district court's local rule requiring parties to request oral argument or it is waived).

In the present case, the local rule of the Eastern District of California permits the district court to order a summary judgment motion submitted without oral argument. In the absence of objection or request for oral argument, oral argument is waived. E.D. Cal. Local R. § 78–230(h).[2] This rule is consistent with *Jasinski*. *See Jasinski*, 644 F.2d at 1280. The Mahons failed to request oral argument, and as a result oral argument was waived.

■ Even if waiver occurs, however, a district court may abuse its discretion if it refuses to hear oral argument when a party would suffer unfair prejudice as a result. *See Houston v. Bryan*, 725 F.2d 516, 518 (9th Cir.1984). That is not the situation here. Both parties provided the district court with complete memoranda of the law and evidence in support of their respective positions. The only prejudice the Mahons contend they suffered was the district court's adverse ruling on the mo-

---

**2.** "Upon the call of the motion, the Court will hear appropriate and reasonable oral argument. Alternatively, the motion may be submitted upon the record and briefs on file if the parties stipulate thereto, or if the Court so orders, subject to the power of the Court to reopen the matter for further briefs or oral arguments or both." E.D. Cal. Local R. § 78–230(h).

tion. This is not sufficient to establish the required showing of prejudice. *See Partridge v. Reich,* 141 F.3d 920, 926 (9th Cir.1998).

### B. The Validation of Debt Notice— § 1692g(a)

■ Turning to the merits, the first issue we confront is whether a debt collector satisfies 15 U.S.C. § 1692g(a) merely by sending the debtor a Validation of Debt Notice ("Notice").

The Mahons argue there must be proof that the debtor received the Notice. According to the Mahons, section 1692g(a) requires "communication" between a collector and a debtor, and this means that a collector must establish receipt and acknowledgment of a Notice by the debtor.

We hold that section 1692g(a) requires only that a Notice be "sent" by a debt collector. A debt collector need not establish actual receipt by the debtor. Section 1692g(a)[3] explicitly states that a Notice must be sent. "[A] debt collector shall . . . *send* the consumer a written notice. . . ." 15 U.S.C. § 1692g(a) (emphasis added). Nowhere does the statute require receipt of the Notice.

Challenging the clarity of § 1692g(a), the Mahons argue that information is not truly "sent" until "received," and contend we should focus on the section's reference to "communication." The Mahons point to the language of section 1692g(a) which provides: "Within five days after the initial *communication* with a consumer . . . a debt collector shall, unless the following information is contained in the initial *communication* . . . send the consumer a writ-

ten notice. . . ." 15 U.S.C. § 1692g(a) (emphasis added). Relying on this language, the Mahons argue "communication" is the operative word, and requires an interactive exchange of some kind between the collector and the debtor.

The Mahons' argument misconstrues the section's use of "communication." Section 1692g(a) uses communication as a noun rather than as a verb. The FDCPA defines communication as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Thus, in section 1692g(a), the word "communication" functions solely as a vehicle of information, whereas the word "sent" operates as the active verb identifying the requisite action.

■ The language of 15 U.S.C. § 1692g(a) is plain. Because the language of the statute is plain, we need not consider extrinsic sources to interpret its meaning. *See Pressley v. Capital Credit & Collection Serv., Inc.,* 760 F.2d 922, 924 (9th Cir.1985). The plain language of section 1692g(a) does not require that a Validation of Debt Notice must be received by a debtor. Instead, the plain language states that such a Notice need only be sent to a debtor.

■ The Mahons have not raised a genuine issue of material fact to dispute that the Credit Bureau sent them the required Notice. The Credit Bureau's standard business practice established that the September 21, 1995 Notice was sent to the Mahons' home via first class mail. The Credit Bureau's CUBS system generated

---

**3.** Section 1692g(a) provides in pertinent part as follows:

"Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing.
. . .
(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any

portion thereof, the debt will be assumed to be valid by the debt collector;
(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector. . . ."
15 U.S.C. § 1692g(a).

the Notice, and then another machine mechanically addressed and stuffed the Notice into an envelope addressed to the Mahons. The Notice was mailed. Before mailing, Credit Bureau employees ensured that the number of outgoing notices corresponded with the number assigned to the daily "batch" of notices to be sent.

The Mahons offered no evidence that the Credit Bureau failed to follow its ordinary business procedure in sending them the Notice. They simply say they did not receive the Notice, just as they say they did not receive any of the monthly statements sent to them by Dr. Bowen's office over a period of more than two years.

We conclude there is no genuine dispute of the fact that the Credit Bureau sent the required Validation of Debt Notice to the Mahons as required by 15 U.S.C. § 1692g(a).

### C. The Adequacy of Verification— § 1692g(b) [4]

 The Mahons also contend the Credit Bureau failed to verify their debt as required by 15 U.S.C. § 1692g(b). Under this section, a debt collector must provide verification of the debt to the debtor, upon written request made by the debtor within 30 days after receipt of the initial Notice. 15 U.S.C. § 1692g(b). If no written demand is made, "the collector may assume the debt to be valid." *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir.1996); 15 U.S.C. § 1692g(a)(3).

 Having already determined that the Notice required by the FDCPA was sent to the Mahons by the Credit Bureau, we presume that it was received shortly thereafter. Under the common law Mailbox Rule, "proper and timely mailing of a document raises a rebuttable presumption

that it is received by the addressee." *Anderson v. United States*, 966 F.2d 487, 491 (9th Cir.1992); *see also Meckel v. Continental Resources Co.*, 758 F.2d 811, 817 (2d Cir.1985) (properly mailed computer-generated notices can be presumed received).

The Mahons argue that their receipt of the September 21, 1995 Notice cannot be presumed because, they contend, a genuine issue of fact exists as to whether subsequent letters sent to them by the Credit Bureau were returned as undeliverable. We reject this argument because it is contrary to the evidence and fails in any event to rebut the presumption of receipt of the September 21, 1995 Notice. Mr. Bellisario's deposition testimony and the Credit Bureau's business practice established that no letters sent to the Mahons by the Credit Bureau were returned as undeliverable. Moreover, even if letters subsequent to the September 21, 1995 Notice had been returned, without any evidence that the September 21, 1995 Notice was returned, the inference would be that it was not returned. This would tend to establish its receipt by the Mahons, apart from the common law Mailbox Rule presumption; and, in any event, that presumption is not rebutted by the absence of proof that the September 21, 1995 Notice was returned to the Credit Bureau.

 We conclude the evidence established, without a genuine dispute of any material fact, that the Notice sent to the Mahons on September 21, 1995 was received by them shortly thereafter. They did not request verification of the debt to Dr. Bowen until June 5, 1996, almost nine months later. For their request to have been effective, it had to be made within

---

4. Section 1692g(b) states:
 If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

 15 U.S.C. § 1692g(b).

thirty days from the date they received the Notice from the Credit Bureau. 15 U.S.C. § 1692g(a)(3). The Mahons' tardy request for verification of the debt, therefore, did not trigger any obligation on the part of the Credit Bureau to verify the debt. Even if it did, however, the Credit Bureau, when it received the June 5, 1996 request, promptly contacted Dr. Bowen's office, verified the nature and balance of the outstanding bill, learned that monthly statements had been sent from Dr. Bowen's office to the Mahons for over two years, and established that the balance was still unpaid. The Credit Bureau then promptly conveyed this information to the Mahons, along with an itemized statement of the account. Although the Mahons did not request verification of the debt within the time provided by the statute, the Credit Bureau properly verified the debt anyway.

## CONCLUSION

The district court did not err in granting the Credit Bureau's summary judgment motion without hearing oral argument. The Fair Debt Collection Practices Act requires only that a Validation of Debt Notice be sent to a debtor, not that the notice be received. The evidence established, without a genuine dispute of any material fact, that the Credit Bureau sent the required Notice to the Mahons. Under the common law Mailbox Rule, the Notice was presumed received shortly after it was mailed. The Mahons failed to request verification of the debt within thirty days following their receipt of the Notice, but when the Credit Bureau received their tardy request, it promptly verified the debt anyway, just as the statute would have required had the Mahons made a timely request.

AFFIRMED.