**Beverley SAMBOR, Plaintiff,**

v.

**OMNIA CREDIT SERVICES, INC., Defendant.**

**Civ. No. 01–00166 SOM/BMK.**

United States District Court, D. Hawai'i.

Feb. 5, 2002.

John Harris Paer (argued), Honolulu, HI, for Plaintiff.

David J. Minkin (present, but did not argue), Philip W. Miyoshi (argued), McCorriston Miller Mukai MacKinnon LLP, Honolulu, HI, for Defendant.

*ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

MOLLWAY, District Judge.

## I. *INTRODUCTION.*

Plaintiff Beverley Sambor ("Sambor") claims that Defendant Omnia Credit Services, Inc. ("Omnia") violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692o, and chapter 443B, Hawaii Revised Statutes. *See* Complaint (March 12, 2001).

On this motion, Sambor seeks summary judgment on the grounds that Omnia violated the FDCPA and chapter 443B: 1) by sending a letter to Sambor that allegedly suggested that disputes had to be in writing and that a debtor requesting verification of a debt had to include "suitable dispute documentation" supporting the debtor's challenge to the claimed debt; 2) by failing to verify the debt; and 3) by telling Sambor that she owed differing amounts. Sambor additionally argues that Omnia violated chapter 443B, but not the FDCPA, by failing to register as a debt collector or as an exempt out-of-state debt collector. The court concludes that Omnia violated the FDCPA when it sent a letter to Sambor pursuant to § 1692g(a) that included language regarding "suitable dispute documentation." This language was likely to deceive or mislead the hypothetical "least sophisticated debtor" into believing that he or she had to dispute the alleged debt in writing. In all other respects, Sambor's motion is denied.

## II. *BACKGROUND FACTS.*

Omnia has an agency collection contract with Capital One Services, Inc. ("Capital One"), to perform collection services for Capital One. *See* Declaration of Douglas Carruthers (Jan. 11, 2002) ¶¶ 2–3. Although Omnia collects debts covered by the FDCPA in Hawaii, it is undisputed that Omnia did not and has not registered as a debt collector or an exempt out-of-state debt collector with the State of Hawaii. *See* Deposition of Doug Carruthers (Oct. 10, 2001) at 5–11.

Pursuant to its contract with Omnia, Capital One transmits "electronic files" to Omnia about "delinquent accounts" Capital One wants Omnia to collect. *See* Carruthers Decl. ¶ 4. Omnia inputs each "electronic file" into its computer program to com-

pute, among other things, accrued interest on each "delinquent account." *Id.* ¶ 5.

On or about December 21, 2000, Capital One referred Sambor's account to Omnia for collection. *Id.* ¶ 7. The electronic file from Capital One indicated that Sambor's account had been delinquent since at least November 11, 1994, and that the principal amount owing on the account was $2,698.27. *Id.* ¶ 9. Omnia's computer calculated the accrued interest on Sambor's account through December 15, 2000, to be $2,530.62. *Id.* ¶ 10. Accordingly, the total amount owing as of December 15, 2000, according to the electronic file and Omnia's computer program, was $5,228.89. *Id.*

On or about December 26, 2000, an Omnia employee telephoned Sambor at her residence regarding her "delinquent account." *Id.* ¶ 11; Declaration of Beverley Sambor (Dec. 26, 2001) ¶ 3. Sambor says that she told Omnia during that conversation that she disputed the debt. Sambor Decl. ¶ 4.

On or about December 28, 2000, Omnia sent a letter to Sambor. *See* Ex. A to Motion; Ex. D to Opposition. The letter stated, in uniform font and type size:

> This account has been placed with our office for collection. If paid in full to this office, all collection activity will be stopped.
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and

address of the original creditor, if different from the current creditor.

> Suitable dispute documentation includes the following:
> - A copy of the front and back of the processed payment
> - A final billing statement (with the original account number referenced) showing a zero balance
> - A dated letter from the original creditor advising the balance is zero
> - A letter from the original creditor or credit bureau agency stating the debt has been removed from their records
> - A letter from the original creditor stating the dispute was resolved in your favor
> - Legal documents(s) providing a discharged bankruptcy

Ex. A to Motion; Ex. D to Opposition. The letter contained a reference to a toll-free number ((888) 603–0266) that Sambor could call to contact Omnia. Ex. A to Motion; Ex. D to Opposition.

The letter from Omnia to Sambor dated December 28, 2000, indicated that the balance due was $5,293.06, which was $64.17 more than previously indicated in the December 26 phone call. Additional interest of $16.17 and a $48.00 warrant/service fee made up the additional $64.17. *See* Declaration of Tera Hill (Jan. 30, 2002) ¶¶ 2–8.

On or about January 8, 2001, Sambor sent a letter to Omnia disputing the entire debt ($5,293.06). Sambor Decl. ¶ 6; Ex. B to Motion. The letter also requested "the dated, original loan application, with [Sambor's] signature along with receipts showing the signatures on items purchased." *Id.*

Without telling Sambor, Omnia then stopped all further collection activity on her account. Carruthers Decl. ¶ 19; Sambor Decl. ¶ 7. Also without telling Sambor, Omnia sent all written materials concern-

ing her account back to Capital One in light of Sambor's disagreement with the debt. *Id.* ¶ 20.

## III. *SUMMARY JUDGMENT STANDARD.*

Summary judgment shall be granted when:

the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see also Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir.2000). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. *See id.* at 323, 106 S.Ct. 2548. A moving party without the ultimate burden of persuasion at trial—usually, but not always, the defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir.2000).

The burden initially lies with the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show

that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted). The nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv.*, 809 F.2d at 630 (quotation omitted). At least some " 'significant probative evidence tending to support the complaint' " must be produced. *Id.* (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *Addisu*, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact"). "[I]f the factual context makes the nonmoving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *California Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987) (*citing Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988); *accord Addisu*, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion").

However, when "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec. Serv.*, 809 F.2d at 631. All evidence and inferences must be construed in the light most favorable to the nonmoving party. *Id.* Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that

the judge is required to resolve in favor of the nonmoving party. *Id.*

## IV. ANALYSIS.

### A. *Omnia Violated the FDCPA by Sending Sambor a Letter that Was Likely to Confuse the Least Sophisticated Debtor Into Thinking that He or She Had to Dispute the Alleged Debt in Writing by Providing Supporting Documentation.*

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Congress passed the FDCPA in light of the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a); *Wade v. Regional Credit Ass'n,* 87 F.3d 1098, 1099 (9th Cir.1996). Congress found that these practices "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a); *Wade,* 87 F.3d at 1099. Congress therefore enacted the FDCPA to eliminate the recurring problem of debt collection agencies' dunning of the wrong persons or attempting to collect debts that consumers had already paid. *Terran v. Kaplan,* 109 F.3d 1428, 1431 (9th Cir.1997).

In furtherance of the goals of the FDCPA, debt collectors are required to provide consumers with adequate information concerning their legal rights. Accordingly, § 1692g(a) requires:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

■ In her motion, Sambor argues that Omnia violated the FDCPA by sending a letter that allegedly suggested that disputes had to be in writing and that any verification request by her had to include documents supporting her challenge to the claimed debt. Sambor does not dispute that the collection letter contained all of the statements required under § 1692g(a). However, Sambor objects to inclusion in the letter of a discussion of "suitable dispute documentation." She asserts that this additional language overshadowed and/or contradicted the statements required under § 1692g(a).

In the Ninth Circuit, whether a validation notice letter violates § 1692g(a) turns on whether the letter is likely to deceive or mislead the hypothetical "least sophisticated debtor."[1] This is an objective, rather than a subjective, test. *See Terran,* 109 F.3d at 1431; *Swanson v. Southern Oregon Credit Serv., Inc.,* 869 F.2d 1222, 1225 (9th Cir.1988); *Baker v. G.C. Servs. Corp.,* 677 F.2d 775, 778 (9th Cir.1982). The "least sophisticated debtor" might be deceived or misled by language that would not deceive or mislead a reasonable debtor. *Terran,* 109 F.3d at 1431–32. To satisfy § 1692g(a)'s requirements, the validation notice must be conveyed effectively to the debtor. It must be large enough to be easily read and sufficiently prominent to be noticed, and it must not be overshadowed or contradicted by other language. *Id.*

Whether the "suitable dispute documentation" language contained in the letter to Sambor violated the "FDCPA" is a question of law that this court can decide on a summary judgment motion.[2] *Terran,* 109 F.3d at 1432. Omnia's letter told Sambor that she could dispute the validity of the debt. The plain language of the letter did not require any dispute to be in writing, although, as required by law, it stated that, if Sambor notified Omnia in writing, Omnia would obtain verification of the debt. There is no dispute that this language complied with the statutory notice requirements of § 1692g(a).

The crux of the problem is not that Omnia failed to notify Sambor of her validation rights pursuant to § 1692g(a), but that the validation notice letter also stated, immediately after the notification of her rights:

Suitable dispute documentation includes the following:

● A copy of the front and back of the processed payment

● A final billing statement (with the original account number referenced) showing a zero balance

● A dated letter from the original creditor advising the balance is zero

● A letter from the original creditor or credit bureau agency stating the debt has been removed from their records

---

**1.** The Ninth Circuit cases discussing the "least sophisticated debtor" standard have arisen in the context of letters sent under § 1692g(a) that were the debt collectors' initial communications with the alleged debtors. The cases do not discuss whether a validation notice letter that is not the initial communication should be evaluated as if it were an initial communication, or whether it should be evaluated in the context of other communications between the debt collector and the alleged debtor. Theoretically, even before receiving a verification notice letter, a debtor could have a lengthy discussion with a debt collector. This could occur in the five-day period provided by statute for the sending of the letter. It is unclear whether, in that circumstance, such communications should affect the light in which the letter is read. Arguably, the letter should then be read to determine whether it might deceive or mislead the "least sophisticated debtor" who had had the benefit of the extensive discussion. In the present case, however, there is no evidence that the very brief phone call Sambor had with an Omnia representative on December 26, 2000, provided any benefit to her at all or assisted her in understanding her rights. This court therefore leaves for another day the issue of whether an initial oral communication that educates the hypothetical "least sophisticated debtor" should be considered in determining whether a violation of § 1692g(a) has occurred.

**2.** On this motion, the court does not rule on whether challenges to validation notices may always be decided as a matter of law. The court can envision that there may be questions of fact regarding oral communications that give context to a written validation notice. As mentioned earlier, the court does not reach the issue of whether these oral communications may be considered for purposes of the "least sophisticated debtor" standard.

- A letter from the original creditor stating the dispute was resolved in your favor
- Legal documents(s) providing a discharged bankruptcy

Ex. A to Motion; Ex. D to Opposition.

██ The exact language contained in Omnia's letter was the subject of an FDCPA claim in *Castro v. ARS Nat'l Servs., Inc.*, 2000 WL 264310 (S.D.N.Y. 2000). *Castro* found that this language violated § 1692g(a).[3] *Castro* reasoned that the "suitable dispute documentation" language "could cause a consumer to become confused or uncertain as to her rights under § 1692g(a)(3)." *Id.* at *3. *Castro* recognized that this additional language may have been intended to aid debtors by giving examples of what could help them to demonstrate that *no money was owing.* Nevertheless, *Castro* concluded that the least sophisticated consumer could reasonably conclude that a document included in the list of "suitable dispute documentation" had to be submitted for that consumer to

dispute the debt. *Id. Castro* also noted that the word "suitable" suggested that certain documentation might be "unsuitable" to dispute the debt. Because § 1692g(a)(3) does not require any documentation to be submitted to dispute a debt, *Castro* concluded that the letter wrongly implied that disputes of alleged debts had to be accompanied by documentation.[4] *Id.* Accordingly, *Castro* found a violation of the FDCPA. The court finds the reasoning in *Castro* persuasive. This court similarly finds that Omnia violated § 1692g(a)(3) by including the "suitable dispute documentation" language in its December 28 letter to Sambor.

Under 15 U.S.C. § 1692k, if Sambor establishes a violation of the FDCPA, she is entitled to her actual damages, such additional damages as this court may allow up to $1,000, the costs of the action, and a reasonable attorney's fee.[5] *See* 15 U.S.C. § 1692k. On this motion, Sambor demands damages, costs, and attorney's fees. The court declines to award damages on the present record, but this denial is with-

---

**3.** According to a letter from Sambor's counsel to this court dated January 31, 2002, the *Castro* case was "resolved and dismissed" and not "appealed or vacated."

**4.** There appears to be some confusion in the Ninth Circuit regarding whether § 1692g(a)(3) is violated by a validation notice letter that requests disputes to be in writing. As noted in *Sanchez v. Robert E. Weiss, Inc.*, 173 F.Supp.2d 1029 (N.D.Cal.2001), the plain language of § 1692g(a)(3) does not require such disputes to be in writing. *Id.* at 1033. On the other hand, §§ 1692g(a)(4) and 1692g(a)(5) have explicit writing requirements. This court agrees with the reasoning in *Sanchez* that a consumer need not dispute a debt in writing for purposes of § 1692g(a)(3). The court recognizes that the Ninth Circuit has stated that, "[i]f no written demand is made, 'the collector may assume the debt to be valid.'" *Mahon v. Credit Bureau of Placer County Inc.*, 171 F.3d 1197, 1202 (9th Cir.1999) (quoting *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir.1996)). However,

the statement in *Mahon* was clearly dicta and therefore not binding on this court. Moreover, the statement in *Mahon* arose in the context of a discussion of § 1692g(b), which, unlike § 1692g(a)(3), does have a writing requirement. Although *Mahon* quoted *Avila* for the writing requirement, *Avila* said only that, under § 1692g(a)(3), a debt collector could assume that a debt was valid if it was not disputed. *Avila*, 84 F.3d at 226. *Avila* did not state that a dispute under § 1692g(a)(3) had to be raised in writing by the debtor.

**5.** The court notes that, in this case, Sambor's reasonable attorney's fees may be very small. Eight days before filing this motion, Sambor's attorney filed a similar motion containing some identical arguments and language in a different case in this district. *See* Plaintiff's Motion for Summary Judgment (December 20, 2001) in *King v. International Data* Servs., Civil No. 01–00380–HG–LEK. Thus, Sambor's attorney may have had to do very little to file Sambor's motion.

out prejudice to an award on a different record.

Sambor has not shown, on the present record, that she suffered any actual damages.[6] There are only two sources of evidence currently before this court regarding Sambor's damages. The first is Sambor's declaration. That declaration merely states that Sambor incurred "expenses" in "determining whether Defendant has engaged in unfair and/or deceptive acts and practices," not that her "expenses" were caused by Omnia's FDCPA violation. Sambor identifies her "expenses" as including at least $15 in "gas, automobile wear and tear, telephone charges, postage and similar charges."[7] Sambor Decl. ¶ 9. The court cannot discern from Sambor's declaration whether she incurred these "expenses" as a result of having been induced by a person or circumstances separate from Omnia's violation. The court is concerned that, when Sambor says she incurred "expenses" in "determining whether" Omnia violated the law, Sambor may be referring to an investigation she conducted for purposes of deciding whether to sue Omnia. Expenses born of a desire to litigate are not necessarily actual damages incurred as a result of an FDCPA violation, although some expenses born of a desire or decision to litigate may be recoverable as fees and costs. It is, for example, possible that a debtor might conduct the same inquiry when a debt collector complies completely with the law. Because all reasonable inferences must be resolved in favor of Omnia on this motion, the court cannot conclude, based on Sambor's declaration, that her expenses were caused by Omnia's FDCPA violation.

The second source of evidence regarding Sambor's damages is the letter that Sambor sent to Omnia. Sambor sent that letter with a return receipt request. The letter not only disputed the debt, it sought verification of the debt. *See* Ex. B to Motion. This court takes judicial notice of the fact that, to send any letter by mail, Sambor would have had to incur some postage cost. Again, however, Sambor has not demonstrated that she incurred the postage cost because of Omnia's violation. In fact, on the present record it appears that Sambor incurred the postage cost not because Omnia had violated § 1692(a)(3), but instead to comply with the statutory requirement of a writing to trigger Omnia's verification obligation. While a debtor need not dispute a debt in writing, the debt collector is obligated to verify the debt (or cease debt collection activities) only upon receiving a timely writing from the debtor disputing the debt. *See* 15 U.S.C. § 1692g(b). On this motion, Sambor has not established that, as a matter of law, "actual damages" include postage costs incurred because Congress requires a writing to be sent by a debtor desiring verification of a debt.

Although "actual damages" are not a prerequisite to "additional damages," con-

---

6. The Ninth Circuit has held that actual damages are not necessary to receive statutory damages and reasonable attorneys' fees. *Baker,* 677 F.2d at 780–81. Pursuant to *Baker,* the court concludes that the other items listed in § 1692k may be recovered without proof of actual damages.

7. The court notes that, when pressed at the hearing, Sambor admitted that she could not say that she had paid anything over and above her normal monthly telephone charge to call Omnia, as Omnia offered a toll-free line. Sambor's admitted overstatement on this point raises concern about the legitimacy of her actual damage assertions.

The court additionally notes that Sambor has not demonstrated that she has sufficient personal knowledge to testify to a dollar value for the alleged wear-and-tear on her car.

sideration of "additional damages" is better deferred until after the record has been fully developed as to "actual damages," if any. Costs and attorney's fees cannot be determined on this motion given the absence of detail on those subjects.

### B. *Sambor Has Not Demonstrated that Omnia's Failure to Verify the Debt Violated the FDCPA.*

■ Sambor says that, when she disputed the debt, Omnia was obligated by § 1692g(a) to verify the debt, and that Omnia's failure to do so violated the FDCPA. The court disagrees. Pursuant to § 1692g(b), when a debtor notifies a debt collector in writing within the time provided that a debt is disputed, the debt collector must "cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt ..., and a copy of such verification ... is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b). It is undisputed that Omnia "ceased" collection of Sambor's alleged debt and returned Sambor's account back to Capital One. Carruthers Decl. ¶ 20.

Section 1692g(a) is a notice statute. It only requires that debt collectors provide debtors with certain notices. *See Mahon,* 171 F.3d at 1201 ("We hold that section 1692g(a) requires only that a Notice be 'sent' by a debt collector. A debt collector need not establish actual receipt by the debtor"). The plain language of § 1692g(a) does not actually require validation to be sent to a debtor within a certain amount of time, or ever. Read together, §§ 1692g(a) and 1692g(b) provide that a debt collector must "cease" collecting a debt until the debt collector has verified the debt and sent that verification to the debtor. The provisions do not require both cessation of collection efforts and verification of a debt.

In *Jang v. A.M. Miller & Assocs.,* 122 F.3d 480 (7th Cir.1997), the consumer made the same argument that Sambor advances here. In *Jang,* a debt collector seeking to collect debts for Discover Card agreed to return files to Discover Card whenever a debtor requested verification. *Id.* at 483. The Seventh Circuit held that the dismissal of an FDCPA claim was proper even though the debt collector had no intention of ever itself providing verification, notwithstanding the validation notice letter that stated that such validation would be provided. The Seventh Circuit concluded that "the statute requires only that a debt collector cease all collection activity until verification of the debt is provided to the debtor." It held that "Section 1692g(b) thus gives debt collectors two options when they receive requests for validation. They may provide the requested validations and continue their debt collecting activities, or they may cease all collection activities." *Id.* The Sixth Circuit has reached a similar conclusion. *Smith v. Transworld Systems, Inc.,* 953 F.2d 1025, 1031–32 (6th Cir.1992) (stating that the FDCPA is not violated when a debt collector ceases collecting a debt even though the debt was not verified).

Because Omnia "ceased" collecting the alleged debt, Omnia did not violate the FDCPA by failing to verify Sambor's debt. To hold otherwise, as Sambor would have this court do, would lead to liability under the FDCPA every time a debt collector could not verify a debt. For example, if a credit card company referred an outstanding account to a debt collector and then the credit card company had a fire that destroyed its records, under Sambor's reasoning, the debt collector would violate the FDCPA because it could never send validation of the disputed debt to the consumer, even if the consumer did, in fact, owe the money. As a result, under Sambor's

reasoning, a debt collector would essentially have to verify the debt prior to its initial communication with the debtor. Had Congress intended this, Congress would have so stated in the FDCPA.

Citing *Bailey v. TRW Receivables Mgm't Servs., Inc.,* Civil No. 90–00192 DAE (slip op. Aug. 16, 1990) (attached to Motion as Ex. C), Sambor argues that, in this district, every failure to verify a debt when requested is a violation of § 1692(a)(4).[8] The holding in *Bailey,* however, is not that broad. In *Bailey,* the court held that, when a consumer first paid the debt and then timely requested verification of the debt, the debt collector violated the FDCPA by failing to provide such verification and keeping the consumer's payment.[9] *Bailey* at 6. Although *Bailey* did not explicitly cite § 1692g(b) in reaching this result, it appears to have implicitly ruled on § 1692g(b). Clearly the court in *Bailey* was concerned that failure to find a violation of the FDCPA would have robbed the consumer of the right to have the debt collector confirm that the debt was valid. Because the debt collector in *Bailey* had already collected the debt, there was no collection to "cease" pending validation. In *Bailey,* keeping the consumer's money was tantamount to continuing collection activity. When timely asked in writing to validate a debt, a debt collector either may provide the requested validation and continue the debt collecting activities, or may cease all collection activities. The debt

collector in *Bailey* should have either returned the money or, if it kept the money, provided validation. *Bailey* does not require Omnia to verify an alleged debt that Omnia ceased to collect.

### C. Sambor Has not Met Her Burden of Demonstrating that Omnia Violated the FDCPA by Reporting Different Debt Amounts.

■ Sambor says that Omnia violated the FDCPA by telling her that different amounts were owing at different times. Sambor is arguing that Omnia violated 15 U.S.C. § 1692g(a)(1) (requiring disclosure of the amount of the debt) and 15 U.S.C. § 1692e(2)(A) (making it a violation of the FDCPA to use false representations). On this motion, however, Sambor has not demonstrated that the amounts disclosed to Sambor by Omnia were false.

It appears that Sambor was orally told that she owed $5,228.89 when she was telephoned by Omnia on or about December 28, 2000. Apparently, this amount reflected the amount allegedly owed by Sambor, plus interest, through December 15, 2000. *See* Carruthers Decl. ¶¶ 10–13. When Omnia mailed its letter to Sambor on or about December 28, 2000, additional interest had accrued, and an additional charge for a "warrant/service fee" was added, making the amount owing

---

**8.** Although, in *Mahon v. Credit Bureau of Placer County Inc.,* 171 F.3d 1197, 1202 (9th Cir.1999), the Ninth Circuit stated that, under § 1692g(b), "a debt collector must provide verification of the debt to the debtor, upon written request made by the debtor within 30 days after receipt of the initial notice," *Mahon* did not examine whether a debt collector could satisfy § 1692g(b) by ceasing collection activities instead of verifying the debt. In *Mahon,* the Ninth Circuit held that the debt collector did not have to verify the debt because the debtors had not timely disputed the

debt. *Id.* at 1203. In any event, the panel noted that the debt collector did properly verify the debt by conveying verification information to the debtors. *Id. Mahon* does not resolve the issue Sambor raises here.

**9.** Sambor has not cited any clear authority indicating that a substantive violation of § 1692g(a)(4) occurs whenever a debt collector does not send a consumer validation of an alleged debt.

$5,293.06.[10] Hill Decl. ¶¶ 2–8. Based on this evidence, Sambor has failed to establish that Omnia violated § 1692g(a)(1) by failing to notify her of the amount of the alleged debt.

Sambor says that Omnia's file (dated May 21, 2001) demonstrates that the amount in the December 28 letter was false. The May 21 worksheet indicates that $5,228.89 was owing by Sambor at some unstated time. It does not necessarily follow that the amount listed as being owed in that worksheet was the amount owing on May 21, 2001. Because Sambor does not establish that the May 21, 2001 date is anything more than the printing date, as opposed to the date through which interest was calculated, Sambor has not met her burden of showing that Omnia made a false representation in violation of § 1692e(2)(A).

### D. Omnia Failed to Register as a Debt Collector.

■ Sambor argues that Omnia is liable for having failed to register with the State of Hawaii as a debt collector or to obtain designation as an exempt out-of-state collection agency. On this motion, Sambor premises this argument solely on state law. She argues that she is entitled to damages under Haw.Rev.Stat. § 480–13. It is undisputed that Omnia did not register as a debt collector in Hawaii or apply for designation as an exempt out-of-state collection agency. Omnia's failure to register or obtain a designation of an exempt out-of-state collection agency clearly violated chapter 443B of the Hawaii Revised Statutes.[11] See Keli v. Universal Fidelity Corp., Civil No. 96–00366 ACK at 17 (slip op. Feb. 25, 1997) (attached to Reply as Ex. A) (holding that a debt collector's failure to register violates Chapter 443B of the Hawaii Revised Statutes).

Under Haw.Rev.Stat. § 443B–20, a violation of chapter 443B "shall constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce for purposes of section 480–2." When section 480–2 is violated, Haw.Rev.Stat. § 480–13 allows an individual to bring a suit and seek treble damages or $1,000, whichever is greater, as well as attorney's fees and costs.

To recover under section 480–13, however, a plaintiff must demonstrate damages caused by the violation.[12] Ai v. Frank Huff Agency, Ltd., 61 Haw. 607, 618, 607 P.2d 1304, 1312 (1980) ("While proof of a violation of chapter 480 is an essential element of an action under § 480–13, the mere existence of a violation is not sufficient ipso facto to support the action; forbidden acts cannot be relevant unless they cause private damage"), overruled in part on other grounds by Robert's Haw. Sch. Bus. Inc. v. Laupahoehoe Trans. Co., 91 Hawai'i 224, 982 P.2d 853 (1999); Wiginton v. Pacific Credit Corp., 2 Haw.App. 435, 443–44, 634 P.2d 111, 118 (1981). Accord Jenkins v. Commonwealth Land Title

10. At the hearing, Sambor suggested that the "warrant/service fee" might not be a proper charge, but the present record allows no determination on that issue.

11. Collection agencies are required to register by Haw.Rev.Stat. § 443B–3. A collection agency alternatively may be "granted designation as an exempt out-of-state collection agency." Haw.Rev.Stat. § 443B–3.5.

12. The court notes that, in Keli, the court awarded $1,000 in statutory damages to the plaintiff for the debt collector's failure to register with the state. In so holding, Keli did not examine whether the plaintiff had suffered any actual damages. If the plaintiff in Keli had actual damages, that case is distinguishable from the present case. If statutory damages were awarded in Keli in the absence of actual damages, this court declines to follow Keli on this point.

*Ins. Co.,* 95 F.3d 791, 799 (9th Cir.1996) ("Section 480–13 of the Hawai'i Revised Statutes ... requires that a plaintiff have sustained damages"); *Star Markets, Ltd. v. Texaco, Inc.,* 1996 WL 780472 *6 (D.Haw. Dec.11, 1996). In requiring actual damages, section 480–13 differs from the FDCPA.

As noted above, Sambor does not establish that she suffered actual damages as a result of violations of law by Omnia. She does not show that her "expenses" resulted from Omnia's failure to register. Instead, someone may have told her to check into whether Omnia was registered for the purpose of possibly suing Omnia. Expenses so incurred, even if they give rise to recoverable fees or costs, are not necessarily "damages" flowing from the failure to register. Conceivably, Sambor could have incurred these expenses even if Omnia had been registered. As Sambor has failed to establish on this motion that she was actually damaged by Omnia's failure to register, she is not entitled to summary judgment on her claim under Haw.Rev. Stat. § 480–13.[13]

## V. CONCLUSION.

Summary judgment is granted in favor of Sambor on her claim that Omnia violated 15 U.S.C. § 1692g(a). In all other respects, Sambor's motion for summary judgment is denied.

No later than February 8, 2002, the parties shall contact the Magistrate Judge assigned to this case to set up a settlement conference at a mutually agreeable time.

IT IS SO ORDERED.

---

**13.** For the same reasons, the court denies summary judgment to the extent Sambor bases her section 480–13 claim on Omnia's violation of the FDCPA. This leaves open the issue of whether Omnia's failure to comply with the notice provisions of 15 U.S.C. § 1692g violates section 480–2.